# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MORGAN COHEN, by her guardians and next friends, Jayson and Michelle Cohen, JAYSON COHEN, individually, and MICHELLE COHEN, individually,**<br>Plaintiffs,<br><br>**v.**<br><br>**CHESTER COUNTY DEPARTMENT OF MENTAL HEALTH/INTELLECTUAL DISABILITIES SERVICES,<br>GARY ENTREKIN, in his official and individual capacity,<br>BRIDGET THRASH, in her official and individual capacity,<br>COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF HUMAN SERVICES,<br>TED DALLAS, Secretary, Department of Human Services, in his official and individual capacity,<br>BEVERLY MACKERETH, formerly Secretary, Department of Human Services, in her individual capacity,<br>GARY ALEXANDER, former Secretary of Human Services, in his individual capacity,<br>COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF HUMAN SERVICES, OFFICE OF DEVELOPMENTAL PROGRAMS,<br>NANCY THALER, Deputy Secretary of Human Services for the Office of Developmental Programs, in her official and individual capacity,<br>STEPHEN SUROVIEC, former Deputy Secretary of Human Services for the Office of Developmental Programs, in his individual capacity,<br>DOLORES FRANTZ, former Deputy Secretary of Human Services for the Office of Developmental Programs, in her individual capacity,<br>FRED LOKUTA, former Deputy Secretary** | **CIVIL ACTION**<br><br><br><br>**NO. 15-5285** |

**of Human Services for the Office of Developmental Programs, in his individual capacity,**
**KEVIN M. FRIEL, former Deputy Secretary of Human Services for the Office of Developmental Programs, in his individual capacity ,**
               **Defendants.**

<u>**M E M O R A N D U M**</u>

**DuBois, J.**                                                    **May 24, 2016**

## I.  <u>INTRODUCTION</u>

This case arises out of plaintiff Morgan Cohen's participation in the Pennsylvania Consolidated Waiver program, which provides medical and rehabilitative services to individuals with disabilities.  Morgan's parents, also plaintiffs, seek damages and injunctive relief based on alleged deficiencies in the care that Morgan receives under the Waiver program.  Presently before the Court are defendants' Motions to Dismiss.  For the following reasons, those Motions are granted in part and denied in part.

## II.  <u>BACKGROUND</u>

### A.  <u>Facts</u>

The facts of this case as set forth in the Complaint are as follows.  Plaintiff Morgan Cohen is 23 years old and lives at home with her parents, plaintiffs Jayson and Michelle Cohen. Compl. ¶ 5.  Morgan suffers from significant disabilities, including autism, bipolar disorder, disruptive behavior disorder, intellectual disability, a seizure disorder, and post-traumatic stress disorder.  Compl. ¶¶ 6, 38.  Morgan has limited verbal communication abilities and a history of "severe impulsivity and aggression" that, when combined with her physical strength, leads to violent and destructive behavior, many instances of which are detailed in the Complaint.  Compl. ¶¶ 38-39, 41.

2

Since 2009, Morgan has been enrolled in the Pennsylvania Consolidated Waiver program.  Compl. ¶ 1.  Pennsylvania operates this program to provide community-based services to Medicaid-eligible individuals in order to avoid institutionalization.  Compl. ¶¶ 5, 33.  The Pennsylvania Department of Human Services ("DHS") "is the single state agency responsible" for administering the Waiver program, but it delegates certain responsibilities to county agencies.  Compl. ¶ 14.  Within DHS, the Office of Developmental Programs ("ODP") monitors the services received by Waiver beneficiaries and "retains ultimate administrative authority and responsibility for the operation of the [Consolidated W]aiver program."  Compl. ¶¶ 18-20.  In Morgan's case, DHS and ODP delegated their responsibilities to administer home and community-based services to the Chester County Department of Mental Health/Intellectual Disabilities ("County MH/ID").  Compl. ¶ 10.

Morgan's parents, Jayson and Michelle Cohen, chose the "Participant-Directed Option" of the Waiver program, which allows them to manage Morgan's care as "the Common Law Employer of workers who provide waiver services."  Compl. ¶¶ 5, 52-53.  Morgan has an Individual Support Plan ("ISP") and a Behavioral Support Plan ("BSP"), which document the specific services that the Waiver program will provide to Morgan.  Compl. ¶¶ 46, 71.  "[A]n ISP is a planning document designed to ensure that all appropriate services based on the assessed needs of the individual are identified and implemented.  In Pennsylvania, ISPs must be developed using a person-centered planning process. . . ."  Compl. ¶ 46.

Plaintiffs allege that the services Morgan receives under the Waiver program are deficient in a number of ways.  Specifically, plaintiffs contend that defendants have failed to provide services as set forth in Morgan's ISP and BSP, and refused to conduct additional evaluations of Morgan's needs and update her ISP and BSP.  Compl. ¶¶ 71-72, 80-82, 100, 114-118.  For

3

example, Morgan's ISP states that she requires "4:1[1] hands-on habilitation staffing for 24 hours a day, 7 days a week," but defendants have denied plaintiffs' requests for additional and appropriate staff to ensure that this need is met.  Compl. ¶¶ 68, 71.  Also denied were plaintiffs' requests for respite services[2], behavioral support to control Morgan's violence, speech and language therapy, a proper evaluation by the Philadelphia Health Care Quality Unit, updates to Morgan's ISP, and review of Morgan's BSP by the Chester County Human Rights Committee. Compl. ¶¶ 72, 80-82, 100-118.  Many of these requests were made and rejected on multiple occasions from 2009 to 2015.  *E.g.* Compl ¶¶ 66-67, 84-86, 114-118.  Plaintiffs claim that the failure to provide adequate behavioral support, specifically, has created a situation in which Morgan's violence cannot be controlled and that has resulted in injuries to her parents and brother.  Compl. ¶¶ 95-101.

Plaintiffs also allege that defendants have imposed unnecessary administrative obstacles to the training and payment of Morgan's staff, which diminish the quantity and quality of the services provided to Morgan and has required her parents to personally pay Morgan's staff. Generally, plaintiffs contend that ODP's payment system for participant-directed services is inflexible and that the scheduling system "malfunction[s]."  Compl. ¶¶ 128-134.  These issues interfere with the timely payment of Morgan's staff, and cause many of her staffers to miss work or quit.  *Id.*  Morgan's parents have requested modifications and fixes from ODP and DHS to address these problems, all of which have been denied.  Compl. ¶¶ 128-137.

Finally, plaintiffs aver that defendants retaliated against them for requesting various services that Morgan needs.  Specifically, these acts of retaliation include: the County's

---

[1] The ratio refers to the number of workers that Morgan needs, *i.e.* 4:1 means that four staffers must be present to control Morgan.
[2] Morgan's parents are counted as two of her needed four staff workers at all times.  Respite services are intended to relieve from the demands of caring for Morgan so that they do not have to be on duty continuously.

unilateral revision of Morgan's ISP approximately 40 times without notifying the Cohens (which violates ODP's policy requiring an explanation for any denial or reduction in service); the County's reduction in the pay of Morgan's support staff, even though their wages were within the guidelines approved by ODP; generally ignoring and refusing to respond to the Cohens' reasonable inquiries about how to handle their Common Law Employer responsibilities; and ODP's refusal to use its authority to transfer Morgan's responsibility to a different County. Compl. ¶¶ 139, 140, 143, 144.

### B.   Procedural History

Plaintiffs filed this action on September 22, 2015 against County MH/ID, DHS, ODP, and various individual employees of those agencies.[3]  The defendants are divided into two groups: the County Defendants[4] and the Commonwealth Defendants.[5]

The Complaint asserts the following claims:

- Count I: Discrimination and retaliation in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq., against County MH/ID, DHS, and ODP;

- Count II: Discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., against County MH/ID, DHS, and ODP;

- Count III: Violation of Title XIX of the Social Security Act (a/k/a the Medicaid Act) pursuant to 42 U.S.C. § 1983 against all defendants;

---

[3] The individual defendants are: Gary Entrekin (Administrator of County MH/ID), Bridget Thrash (Deputy Administrator for Intellectual Disability of County MH/ID), Ted Dallas (current DHS Secretary), Nancy Thaler (current ODP Deputy Secretary), Beverly Mackereth (former DHS Secretary), Gary Alexander (former DHS Secretary), Stephen Suroviec (former ODP Deputy Secretary), Dolores Frantz (former ODP Deputy Secretary), Fred Lokuta (former ODP Deputy Secretary), and Kevin M. Friel (former ODP Deputy Secretary).
[4] The County defendants are: County MH/ID, Entrekin, and Thrash.
[5] The Commonwealth defendants are: DHS, ODP, Dallas, Thaler, Mackereth, Alexander, Suroviec, Frantz, Lokuta, and Friel.

- Count IV: Violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against County MH/ID and all individual defendants;

- Count V: Violation of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against County MH/ID and all individual defendants;

- Count VI: Violation of the Pennsylvania Mental Health/Intellectual Disability Act of 1966 (the "MH/ID Act"), 50 P.S. § 4101 et seq., against the County defendants;

- Count VII[6]: Intentional Infliction of Emotional Distress against the County defendants.

The Complaint seeks equitable relief requiring defendants to, *inter alia*, provide adequate staffing, therapies, and services that have been denied to Morgan, revise Morgan's ISP, and remove administrative barriers to the payment of Morgan's staff.  Plaintiffs also seek compensatory damages, punitive damages, and attorneys' fees.

On December 9, 2015, the County defendants filed a Motion to Dismiss all claims against them under Rule 12(b)(6) or, in the alternative, for a more definite statement under Rule 12(e).  On January 29, 2016, the Commonwealth defendants filed a separate Motion to Dismiss all claims against them under Rule 12(b)(6).  Plaintiffs responded to both Motions, which are now ripe for the Court's consideration.

## III.    <u>LEGAL STANDARD</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level."  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient

---

[6] The Complaint misidentifies the intentional infliction of emotional distress claim as a second "Count VI."

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions."  *Twombly*, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded.  *Iqbal*, 556 U.S. at 679.  The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief.  *Id.*

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  However, the Court may dismiss a claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment."  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

## IV.   DISCUSSION

All defendants argue that the Complaint fails to allege sufficient facts to state any of the asserted claims, and seek dismissal under Rule 12(b)(6).  The County defendants alternatively move for a more definite statement under Rule 12(e).  The Court will address the challenges to each Count in turn.

### A.   Timeliness of Plaintiffs' ADA and § 1983 Claims (Counts I, III, IV, and V)

The Complaint in this action was filed on September 22, 2015.  The Commonwealth defendants argue that plaintiffs' ADA and § 1983 claims are subject to a two-year statute of limitations, and therefore cannot encompass any conduct that occurred before September 22, 2013.  Plaintiffs respond that they are exempted from the limitations period because the Complaint pleads a pattern of continuous violations from 2009 to the present, and therefore all

conduct alleged in the Complaint is actionable under the ADA and § 1983.  The Court agrees with plaintiffs.

Under the continuing violations doctrine, "a plaintiff can sue for actions that occurred outside the applicable limitations period if a defendant's conduct is part of a continuing practice and. . . the last act evidencing the continuing practice falls within the limitations period." *Cibula v. Fox*, 570 F. App'x 129, 135 (3d Cir. 2014) (internal quotation marks omitted).  "To determine whether a practice was continual," a court considers: "(1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently." *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 165–67 (3d Cir. 2013).  "A plaintiff must also point to an affirmative act that took place within the limitations period for the continuing violations doctrine to apply." *Cibula*, 570 F. App'x at 136.

The Court determines that the Complaint pleads continuing violations from 2009 to 2015, when this action was filed.  First, the practices complained of were continual: all of the services requested are allegedly due to Morgan under the Consolidated Waiver, and thus the denial of these requests all pertain to the same subject matter; plaintiffs frequently requested that defendants provide various services from 2009 to 2015, and defendants consistently denied these requests.  Second, plaintiffs have also alleged that many denials, which are affirmative acts of defendants, occurred after September 22, 2013, within the limitations period.  Examples include: requests for additional staff support at a 4:1 ratio on December 17 and 19, 2014, and denied on January 2, 2015 (Compl. ¶¶ 84-86); and requests for speech therapy to mitigate Morgan's language regression and for updated ISP review and assessments regarding Morgan's need for such therapy in October 2014, and on April 29, May 27, and August 25, 2015, which were later denied (Compl. ¶¶ 66-67, 114-118).  Accordingly, the Commonwealth defendants' Motion to

8

Dismiss is denied to the extent it seeks dismissal of the ADA and § 1983 claims in Counts I and III-V as untimely on the ground that plaintiffs have plead a pattern of continuing violations.

### B.   County MH/ID is Not a Proper Defendant (All Counts)

The County defendants argue that County MH/ID is not independently subject to suit because it is not a legal entity separate from Chester County itself.  This position taken by the County defendants is correct.  *See, e.g.*, *Kane v. Chester Cnty. Dept. of Children, Youth and Families*, 10 F. Supp. 3d 671, 686 (E.D. Pa. 2014) (dismissing federal and state law claims against Chester County agency because it did not have a legal existence separate from the County itself); *Harris ex rel. Litz v. Lehigh Cnty. Office of Children & Youth Servs.*, 418 F. Supp. 2d 643, 646 n.1 (E.D. Pa. 2005) (dismissing federal and state law claims against county agency and "imput[ing]" agency's alleged actions to the county itself).  County MH/ID has no legal existence separate from the County itself, and thus it cannot be sued.  *See Kane*, 10 F. Supp. 3d at 686 n.50 (explaining that six agencies, none of which are County MH/ID, are the only "legally separate units" from the County itself).

The County defendants also correctly argue that County MH/ID is not a proper defendant in plaintiffs' § 1983 claims because county agencies are not "persons" that can be sued under § 1983.  A municipal agency is "merely an administrative arm of the municipality itself," and the municipality is the proper defendant to § 1983 claims arising from the agency's actions.  *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003); *Open Inns, Ltd. v. Chester Cnty. Sheriff's Dep't*, 24 F. Supp. 2d 410, 416-17 n.13 (E.D. Pa. 1998) (concluding that Chester County Sherriff's Department was not proper defendant to § 1983 claim).

Accordingly, the Court grants the County defendants' Motion to Dismiss all claims against County MH/ID.  As explained *infra*, this dismissal is without prejudice to plaintiffs' right

to reassert such claims against Chester County by amended complaint within twenty (20) days if warranted by the facts and applicable law, with the exception of the Due Process claims (Count V), which are dismissed with prejudice. *See infra* § D.3.

## C. Claims Under the ADA and Rehabilitation Act (Counts I and II)[7]

Plaintiffs assert claims under the ADA and Rehabilitation Act against County MH/ID, DHS, and ODP.  The Complaint generally alleges that defendants discriminated against Morgan based on the severity of her disabilities when they denied services to her that are available under the Waiver program, afforded her an unequal opportunity to benefit from such services, and failed to make reasonable modifications to their policies and procedures so as to enable Morgan to receive effective services under the Waiver program.  Compl. ¶¶ 146, 148.  Plaintiffs rely on ADA regulations prohibiting public entities from "provid[ing] different or separate aids, benefits, or services to individuals with disabilities or a class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others."  28 C.F.R. § 35.130; *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 598-603 (1999) (explaining that the ADA prohibits not only disparate treatment among disabled and non-disabled persons, but among disabled persons).[8]  Plaintiffs also claim that defendants retaliated against them out of animus toward Jayson and Michelle Cohen due to their repeated requests for

---

[7] The analysis of these claims is combined because claims under the ADA and Section 504 of the Rehabilitation Act are treated identically.  *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.").

[8] *See also* 45 C.F.R. § 84.4 (prohibiting recipients of federal funds from "[a]ffording a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," "[p]rovid[ing] a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others," or "[p]rovid[ing] different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others").

services.  *See* Compl. ¶¶ 139, 140, 143, 144.  For the reasons explained below, the Court determines that the Complaint states claims for discrimination and retaliation under the ADA and Rehabilitation Act against Chester County (County MH/ID), DHS, and ODP, and denies the Motions to Dismiss these claims.

### 1.   Discrimination Claims (Counts I and II)

To plead a claim for discrimination under the ADA and/or Section 504 of the Rehabilitation Act, a complaint must allege that the plaintiff "(1) has a disability; (2) was otherwise qualified to participate in a [government] program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability." [9]  *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). Defendants challenge only the third element.

Moreover, to recover compensatory damages for discrimination claims under the ADA and the Rehabilitation Act, a plaintiff must establish intentional discrimination, which can be shown by deliberate indifference.  Deliberate indifference requires "(1) knowledge that a federally protected right is substantially likely to be violated… and (2) failure to act despite that knowledge."  *Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013).

As noted above, plaintiffs generally allege that defendants' denial of their many requests have resulted in services to Morgan that are less effective than the services to which she is

---

[9] The third element's "because of" requirement can be established by any of the following evidentiary theories: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionately impacts disabled people."  *S.K. v. North Allegheny Sch. Dist.*, No. 14 Civ. 218, 2015 WL 1285794, at *5 n.3 (W.D. Pa. March 20, 2015).  Plaintiffs are not required to specify which theory or theories of liability they are pursuing at the pleading stage of the litigation.  *Illinois League of Advocates for the Developmentally Disabled v. Quinn*, No. 13 Civ. 1300, 2013 WL 5548929, at *8 (N.D. Ill. Oct. 8, 2013) (holding plaintiffs do not need to choose which theory or theories will be used to prove their claims at the pleading stage (citing Fed. R. Civ. P. 8(a) (requiring plaintiff to include a "short and plain statement of the claim" showing a right to relief)).

entitled under the Consolidated Waiver, and that this disparate treatment constitutes discrimination on the basis of the severity of her disability.  Plaintiffs further aver that defendants were deliberately indifferent to Morgan's rights because they knew that failing to provide Morgan with various services would interfere with her benefits under the Waiver program, but failed to act.  Specifically, plaintiffs contend that the following actions by defendants were discriminatory:

- ODP's use of a malfunctioning and inflexible system for paying Morgan's staff and its refusal to provide modifications to that system, which "have the effect of discriminating against Waiver beneficiaries with more significant disabilities because those persons need higher levels of support and … more complex and flexible patterns of staffing";

- County MH/ID's refusal to accommodate the Cohens' requests for additional services (i.e. proper evaluations and assessments of Morgan's needs; 4:1 staffing, behavioral support, habilitation services, and respite services, and speech therapy), which results in Morgan's inability to equally benefit from the Waiver program due to the severity of her disabilities.

Accepting the allegations in the Complaint as true, the Court determines that plaintiffs have pled a claim of discrimination under the ADA and the Rehabilitation Act.  Refusing to provide services to which an individual is entitled under a state program because that individual has more significant needs constitutes discrimination on the basis of the severity of that individual's disability.  *Cf. Illinois League of Advocates for the Developmentally, Disabled v. Quinn*, No. 13 Civ. 1300, 2013 WL 5548929, at *8 (N.D. Ill. Oct. 8, 2013) (allegations that the state "intentionally targeted developmentally disabled [plaintiffs] for greater cuts in funding and in effective, necessary services than those cuts imposed on individuals with other types of disabilities" stated a discrimination claim); *Nelson v. Milwaukee Cnty.*, No. 04 Civ. 193, 2006 WL 290510, at *6-7 (E.D. Wis. Feb. 7, 2006) (allegations that public entity provided disparate funding for groups of disabled individuals and refused to modify its funding policies to make individualized service determinations were sufficient to state a discrimination claim).  Moreover,

the Complaint is replete with allegations that plaintiffs requested reasonable and necessary

modifications to the services being provided to Morgan, all of which were arbitrarily denied with

the effect of preventing Morgan from being able to participate in and benefit from the Waiver

program.  *See Muhammad v. Ct. of Common Pleas of Allegheny Cnty., Pa.*, 483 F. App'x 759,

762-63 (3d Cir. 2012) (affirming that failure to accommodate theory is available under ADA and

Rehabilitation Act).

Finally, plaintiffs have alleged facts showing that they communicated to defendants the

detrimental effects of the insufficient services Morgan receives, and that defendants failed to take

any action to remedy the situation.  *E.g.* Compl.  98-101 (quoting April 2013 letter from

Michelle Cohen in 2013 that described one of Morgan's violent incidents and the need for

increased behavioral support, but alleging that additional behavioral support had not been added

to Morgan's ISP as of February 2015).

The Court concludes that the Complaint alleges sufficient facts to support a claim for

discrimination under the ADA and Section 504 of the Rehabilitation Act against Chester County

(County MH/ID), DHS, and ODP.  Defendants' Motions to Dismiss the discrimination claims in

Counts I and II of the Complaint are therefore denied.

### 2.      Retaliation Claims (Counts I and II)

To plead a claim of retaliation under the ADA and Section 504 of the Rehabilitation Act,

plaintiff must allege (1) protected activity, (2) adverse action either after or contemporaneous

with the protected activity, and (3) a causal connection between plaintiff's protected activity and

the adverse action.  *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

Again, defendants only challenge the adequacy of the Complaint's allegations in connection with

the third element of causation.  "To establish the requisite causal connection a plaintiff usually

must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  Plaintiff may also rely on an inference of causation from the facts as a whole.  *Id.*

The Court determines that the Complaint pleads sufficient facts on the issue of causation to withstand a motion to dismiss.  The Complaint alleges that there was a pattern of antagonism between plaintiffs and defendants concerning Morgan's services which spanned the course of many years. *E.g.* Compl. ¶ 142 (averring that after the Cohens prevailed at a "fair hearing," the County ordered the Cohens not to communicate with defendant Thrash and called the police to request that they arrest Michelle Cohen for harassment).  Moreover, the Complaint sets forth a general sequence of events from which a trier of fact could infer causation: plaintiffs requested various accommodations or services, defendants denied them, plaintiffs repeated their initial requests or made additional requests, and defendants retaliated by revising Morgan's ISP without notice, reducing the pay of Morgan's support staff, and refusing to transfer oversight of Morgan's services to a different County.  *See M.S. ex rel. Shihadeh v. Marple Newtown Sch. Dist.*, No. 11 Civ. 5857, 2012 WL 3815563, at *4 (E.D. Pa. Sept. 4, 2012) (denying motion to dismiss retaliation claims under ADA and Section 504 of the Rehabilitation Act because plaintiff alleged general sequence of events supporting inference of causation).  The Court denies defendants' Motions to Dismiss the retaliation claims against County MH/ID (Chester County), DHS, and ODP under the ADA and Rehabilitation Act in Counts I and II of the Complaint for these reasons.

**D.**    **§ 1983 Claims (Counts III, IV, and V)**

To prevail on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or federal law. 42 U.S.C. § 1983; *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999).

In this case, plaintiffs contend that defendants violated their rights protected by (1) Title XIX of the Social Security Act, which is the Medicaid Act, (2) the Equal Protection Clause of the Fourteenth Amendment, and (3) the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  The Court will address these claims in turn.

### 1.    Violations of the Medicaid Act (Count III)

Plaintiffs claim that all defendants deprived Morgan of her rights under the Medicaid Act, 42 U.S.C. §§ 1396a(a)(8), 1396n(c), and related regulations.[10]  Section 1396a(a) states imposes various requirements on state waiver programs, including that they "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." § 1396a(a)(8).  "Medical assistance" is defined as "payment of part or all of the cost of. . . care and services or the care and services themselves, or both," under certain circumstances.  § 1396d(a).

---

[10] The regulations cited in the Complaint are 42 C.F.R. §§ 440.230(c) and 441.302(a).  Section 440.230(c) provides: "The [state] Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service. . . to an otherwise eligible beneficiary solely because of the diagnosis, type of illness, or condition." Section 441.302, which is located in Subpart G governing "Home and Community-Based Services: Waiver Requirements," provides: "Unless the Medicaid agency provides the following assurances to CMS [Centers for Medicare & Medicaid Services], CMS will not grant a waiver under this subpart and may terminate a waiver already granted: (a) Health and Welfare—Assurance that necessary safeguards have been taken to protect the health and welfare of the beneficiaries of the services.  Those safeguards must include—(1) Adequate standards for all types of providers that provide services under the waiver; (2) Assurance that the standards of any State licensure or certification requirements are met for services or for individuals furnishing services that are provided under the waiver; and. . . (4) Assurance that the State is able to meet the unique service needs of individuals when the State elects to serve more than one target group under a single waiver. . . ."

Plaintiffs have a private right of action to enforce section 1396a(a)(8) under § 1983. *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180 (3d Cir. 2004) (finding implied private right of action under § 1396(a)(8)).  "[W]here Congress required states accepting Medicaid funding to provide certain services to the developmentally disabled, 'Congress conferred specific entitlements on individuals in terms that could not be clearer' and are therefore individually enforceable in an action brought under 42 U.S.C. § 1983." *Leonard v. Mackereth*, No. 11 Civ. 7418, 2014 WL 512456, at *8 (E.D. Pa. Feb. 10, 2014) (quoting *Sabree*, 367 F.3d at 190).

The pleading standard for a violation of the "reasonable promptness" requirement is satisfied by allegations that: (1) the plaintiff is eligible for the services at issue, and (2) the state has failed to provide those services.  *See, e.g.*, *Leonard*, 2014 WL 512456, at *8 (granting summary judgment to plaintiffs when it was undisputed that plaintiffs were eligible for services and that state had failed to provide them); *O.B. v. Norwood*, 15 Civ. 10463, 2016 WL 1086535, at *6 (N.D. Ill. March 21, 2016) (denying motion to dismiss "reasonable promptness" claim where it was "undisputed that Defendant found all. . . Class members eligible for" services but "failed to provide adequate services. . . ." (internal quotation marks omitted)).  In the words of one court, the "reasonable promptness" requirement does not give states "total discretion" concerning whether to provide "new and different services" because "the assistance must correspond to the individual's needs." *Boulet v. Cellucci*, 107 F. Supp. 2d 61, 79 (D. Mass. 2000).

Plaintiffs in this case allege that defendants violated Morgan's rights under these sections of the Medicaid Act by, *inter alia*:

- Denying of additional staff support at a 4:1 ratio, excluding Morgan's parents as support workers;

- Failing to provide sufficient behavioral support, which is available under the Consolidated Waiver without limitation, to control Morgan's violent outbursts;

- Failing to provide speech therapy in spite of the prescription of Morgan's physician that she receive 3 hours/week of speech therapy due to her language regression, and denying Mr. Cohen's requests for updated ISP review and assessments regarding this issue;

- Failing to keep Morgan's assessments up to date and complete, including the failing to properly assess her individual needs.

Defendants do not contest that Morgan is eligible for all of the services she was allegedly denied.[11]

The Court determines that the Complaint contains sufficient factual allegations to state a claim under § 1983 that defendants violated the relevant provisions of the Medicaid Act.  The Complaint alleges that Morgan was eligible for all of the services that her parents requested, and that those services were available under the Consolidated Waiver.  Plaintiffs allege that defendants not only failed to provide those services with "reasonable promptness," but have failed to provide many of those services at all.  *See* § 1396a(a)(8).

Plaintiffs also assert a claim under § 1396n(c)(2)(A).  Section 1396n(c) requires states operating waiver programs to provide the federal government with "assurances" that "necessary safeguards. . . have been taken to protect the health and welfare of individuals provided services under the waiver."  42 U.S.C. § 1396n(c)(2)(A).  Courts have found an implied private right of action to enforce § 1396n(c)(2)(A).  *Wood v. Tompkins*, 33 F.3d 600 (6th Cir. 1994) (finding implied private right of action under § 1396n(c)(2)(A) and corresponding regulation 42 C.F.R. § 441.302); *Masterman v. Goodno*, No. 03 Civ. 2939, 2004 WL 51271, at *9-10 (D. Minn. Jan.

---

[11] The County defendants argue that they cannot be liable under any of the legal theories asserted by plaintiffs because the only services Morgan was denied were "discretionary."  The County defendants provide no authority for this proposition, and the authority reviewed by the Court undermines their argument.  *See Boulet*, 107 F. Supp. 2d at 79 (explaining that state's discretion to refuse services was limited because beneficiaries must receive care based on their individualized needs).  The Court rejects defendants' argument on the present state of the record.

8, 2004) (same as to § 1396n(c)(2)(A)).  In contrast to § 1396a(a)(8), there is very little case law specifically construing § 1396n(c)(2)(A) and what standard should be applied to determine whether allegations are sufficient to state a claim under that section.  One court interpreted § 1396n(c)(2)(A) as requiring the state to "provide sufficient Medicaid services."  *Id.* at *9.

The Court determines that the Complaint states a claim under § 1396n(c)(2)(A). Plaintiffs allege facts showing that Morgan's health and welfare, and the safety of her family, are endangered by defendants' provision of insufficient services.  These facts support plaintiffs' argument that defendants have failed to employ "necessary safeguards. . . to protect the health and welfare of individuals provided services under the waiver" as required by § 1396n(c)(2)(A).

Accepting the factual allegations in the Complaint as true, the Court concludes that plaintiffs have stated a claim under § 1983 that defendants violated Morgan's rights under the Medicaid Act §§ 1396a(a)(8) and 1396n(c)(2)(A). The Court thus denies defendants' Motions to Dismiss the Medicaid Act claims (Count III).

2.    Equal Protection Violations (Count IV)

Plaintiffs claim that all individual defendants and County MH/ID subjected Morgan to "intentional and purposeful discrimination because of the severity of her disabilities. . . [with] deliberate indifference to her health, safety and well-being" in violation of the Equal Protection Clause of the Constitution.  Compl. ¶ 153.  To support these claims, plaintiffs rely on the same factual allegations underlying their ADA and Rehabilitation Act claims. For the reasons explained below, the Court determines that these allegations do not state a claim under the Equal Protection Clause.

The Equal Protection Clause prohibits public entities from discriminating against the disabled without a rational basis.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 445-47

(1985).  "Plaintiff's equal protection claim[s] may only proceed on a class of one theory because [s]he is not within the protected classes recognized for purposes of the equal protection clause." *Smith v. McClendon*, No. 14 Civ. 6358, 2015 WL 2079689, at *5 (E.D. Pa. May 5, 2015).  A plaintiff asserting a "class of one" claim must show that: (1) defendants, acting under color of state law, intentionally treated plaintiff differently from others similarly situated; and (2) that there was no rational basis for the treatment. *Pressley v. Pa. Dep't. of Corrs.,* 365 F. App'x 329, 331–32 (3d Cir. 2010).  To satisfy the first prong, a plaintiff must plausibly allege the existence of similarly situated individuals who the defendant treated differently.  *Perano v. Twp. of Tilden,* 423 F. App'x 234, 238 (3d Cir. 2011).  In order to be "similarly situated," the individuals must be alike to plaintiff "in all relevant aspects."  *Id.*  "At the motion to dismiss stage, [the plaintiff] must allege facts sufficient to make plausible the existence of such similarly situated parties."  *Id.*  "Where a plaintiff fails to sufficiently identify the existence of such similarly situated parties, the plaintiff's class of one claim will fail."  *Smith*, 2015 WL 2079689, at *6.

In this case, the Complaint does not allege that Morgan was treated differently from other similarly situated individuals without a rational basis.  While plaintiffs need not specify the names of such individuals or describe in great detail the instances in which defendants treated them more favorably than Morgan, plaintiffs do need to show that Morgan was treated *differently* from someone else.[12]  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 244-47 (3d Cir. 2008). For this reason, the Court grants defendants' Motions to Dismiss the Equal Protection claims

---

[12] Additionally, plaintiffs' requests for accommodations and changes to Morgan's services are not cognizable under the Equal Protection Clause, which "does not does not require States to make special accommodations for the disabled, so long as their actions toward the disabled are rational."  *Zied-Campbell v. Richman*, No. 04 Civ. 26, 2007 WL 1031399, at *23 (M.D. Pa. Mar. 30, 2007), *aff'd*, 428 F. App'x 224 (3d Cir. 2011); *see also Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come through positive law and not through the Equal Protection Clause.").

against all defendants (Count IV) without prejudice to plaintiffs' right to file an amended complaint within twenty (20) days if warranted by the facts and applicable law.

        3.     <u>Due Process Violations (Count V)</u>

Plaintiffs claim that all individual defendants and County MH/ID have a "special relationship with Morgan through her status as a home and community based waiver recipient for whom. . . Defendants have a duty of care to protect Morgan's safety and freedom from harm," and that "defendants' refusal to provide her with the services she needs" constitutes a breach of their duties and has caused injury to Morgan and her family. Pls.' Resp. to Chester Cnty. Defs.' Mot. to Dismiss, at 24. The Court determines that plaintiffs cannot rely on a "special relationship" theory of liability and dismisses their Due Process claims with prejudice.

Plaintiffs rely on the Supreme Court's decision in *Youngberg v. Romeo*, 457 U.S. 307, 316-18 (1982), which held that involuntarily committed persons with mental disabilities have substantive due process rights to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate habilitation training. While the Due Process Clause generally does not require states to affirmatively protect their residents, states do owe a duty of care to institutionalized persons who are in their custody and thus entirely dependent on them. *Id.* at 317-18.

The decision in *Youngberg* was an extension of the rule announced in *DeShaney v. Winnebago County Department of Social Services*, in which the Supreme Court explained that "when the state takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." 489 U.S. 189, 199-200 (1989); *see also Torisky v. Schweiker*, 446 F.3d 438, 444 (3d Cir. 2006) (discussing *Youngberg* and *DeShaney*). "The affirmative duty to protect

arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200; *see also Fialkowski v. Greenwich Home for Children, Inc.*, 921 F.2d 459, 465 (3d Cir. 1990) (concluding that severely disabled adult could not pursue *Youngberg* claim because his parents voluntarily placed him in a community health center); *Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 991 (1st Cir. 1992) ("Because the state did not commit Monahan involuntarily, it did not take an 'affirmative act' of restraining his liberty," and thus the state had no "corresponding due process duty to assume a special responsibility for his protection.").

Plaintiffs cannot assert special relationship claims under *Youngberg* because the state has not taken any affirmative act that limits Morgan's freedom.  Specifically, plaintiffs' claim that defendants' provision of services under the Waiver program creates a "special relationship" is incorrect; the purpose of the Waiver program is to avoid institutionalization by providing home and community-based services.[13]  Morgan is not involuntarily institutionalized; she lives at home with her family.  While she is dependent on the state for certain medical services, she is not physically in state custody.  The state has not taken an "affirmative act of restraining her liberty," and thus does not owe Morgan any affirmative duty of protection.  For this reason, plaintiffs' substantive due process claims must be dismissed with prejudice because any amendment of the factual pleadings would be futile.  The Court thus grants defendants' Motions to Dismiss plaintiffs' Due Process claims (Count V) with prejudice.

---

[13] Moreover, no "special relationship" between Morgan and defendants arises from defendants' obligations under the MH/ID Act.  The Third Circuit has ruled the MH/ID Act does not create such a relationship, and thus that mentally handicapped individuals living at home cannot bring substantive due process claims challenging the services they receive under state law.  *Phila. Police and Fire Ass'n for Handicapped Children, Inc. v. City of Phila.*, 874 F.2d 156, 167-68 (1989).

4.     Immunity

Plaintiffs' only surviving § 1983 claims for violation of the Medicaid Act are asserted against all defendants.  All defendants argue that they are immune from these claims for a number of reasons, which the Court will address in turn.

(a.) *Commonwealth Agencies*

The Commonwealth agency defendants, DHS and ODP, argue that they cannot be liable under § 1983 because they are immune under the Eleventh Amendment.  It is well established that "[s]tates are not 'persons' within the meaning of § 1983 and, therefore, cannot be among those held liable for violations of the civil rights statute.  Since Congress expressed no intention of disturbing the states' sovereign immunity in enacting § 1983, these suits, when brought against a state, are barred by the Eleventh Amendment." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989)).  This prohibition "extends to entities that are considered arms of the state." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007).  Pennsylvania has retained its sovereign immunity from suit, and none of the narrow exceptions to that immunity is applicable in this case. *See Merriweather ex rel. Walker v. City of Philadelphia*, No. 07 Civ. 1005, 2007 WL 1463304, at *4 (E.D. Pa. May 17, 2007).

The Commonwealth agencies, DHS and ODP, are "arms of the state" and therefore protected by state sovereign immunity under the Eleventh Amendment.  Because DHS and ODP are immune from liability under § 1983, amendment of the claims against these defendants would be futile.  Accordingly, the Court grants the Commonwealth defendants' Motion to Dismiss the § 1983 claims against DHS and ODP (Count III) with prejudice.

*(b.) Individual Commonwealth Defendants*

Plaintiffs assert claims against all of the individual Commonwealth defendants in their individual capacities.  "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "[T]o establish *personal* liability in a § 1983 action, [plaintiff must] show that the official, acting under color of state law, caused the deprivation of a federal right."  *Id.* at 167 (emphasis in original).  "More particularly, the plaintiff must allege that the defendant was personally involved in the deprivation."  *Johnson v. Derose*, 349 F. App'x 679, 681 (3d Cir. 2009).

The Complaint in this case lacks any factual allegations concerning defendants Dallas, Mackereth, Alexander, Suroviec, Frantz, and Lokuta, and therefore fails to allege that these individuals were personally involved in violating plaintiffs' rights.  Friel and Thaler are mentioned in the Complaint, but the allegations concerning these individuals are also insufficient to raise a claim that they personally caused the deprivation of plaintiffs' rights.[14]  Thus, the Court grants the Commonwealth defendants' Motion to Dismiss the individual capacity claims under § 1983 (Count III) without prejudice to plaintiffs' right to file an amended complaint within twenty (20) days if warranted by the facts and applicable law.

Plaintiffs also assert claims against Thaler and Dallas in their official capacities.  "Official-capacity suits. . . generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Graham*, 473 U.S. at 165.  "[S]tate officials acting in their official capacities are not 'persons' under § 1983.  Nevertheless, in certain circumstances,

---

[14] Specifically, the only allegation mentioning Friel states that he issued a "Developmental Programs Bulletin" defining an ISP, which plaintiffs do not link to any violation of the Medicaid Act.  Compl. ¶ 46. The Complaint only mentions Thaler in one paragraph, which quotes a letter she wrote denying one of plaintiffs' requests.  Compl. ¶ 127.  Again, plaintiffs do not connect this allegation to any violation of the Medicaid Act.

those officials may still be subject to federal suit, despite the Eleventh Amendment, under the narrow exception of *Ex Parte Young*, 209 U.S. 123 (1908)." *Blanciak*, 77 F.3d at 697. *Ex Parte Young* permits official capacity suits seeking only prospective injunctive relief "that serves directly to bring an end to a present, continuing violation of federal law." *Id.* at 698.

In this case, plaintiffs' Medicaid Act claims against Dallas and Thaler in their official capacities are proper because they allege a present, ongoing violation of federal law and the equitable relief they seek is directed to remedying that violation. Specifically, the Complaint alleges that Morgan still is not receiving various services for which she is eligible and plaintiffs seek equitable relief requiring defendants to, *inter alia*, provide adequate staffing, therapies, and services that have been denied to Morgan. Dallas and Thaler, in their official capacities as the heads of DHS and ODP, respectively, can provide the equitable relief plaintiffs seek. Thus, plaintiffs' § 1983 claims against Dallas and Thaler in their official capacities for prospective injunctive relief will be allowed to proceed. The Commonwealth Defendants' Motion to Dismiss these claims is denied.

### (c.) County MH/ID

Plaintiffs also assert § 1983 Medicaid Act claims against County MH/ID. As stated *supra* in Section B, County MH/ID is not a legal entity separate from Chester County itself and County MH/ID is not a "person" which can be sued under § 1983.

In addition, municipalities and their agencies cannot be held liable under a *respondeat superior* theory for the constitutional violations committed by their employees. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Rather, municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief [only] where. . . the action that is alleged to be unconstitutional implements or executes a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *see Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010) (reaffirming that *Monell* applies to all claims against local governments, regardless of the type of relief sought).

The Complaint in this action does not allege that any violations of the Medicaid Act by County MH/ID were pursuant to any policy or custom, and thus it fails to state a § 1983 claim under *Monell*. For that reason, Plaintiffs' remaining § 1983 claims against Chester County (County MH/ID) (Count III) are dismissed without prejudice to plaintiffs' right to file an amended complaint within twenty (20) days if warranted by the facts and applicable law. *See supra* § B.

### (d.) *Individual County Defendants*

Finally, plaintiffs assert their § 1983 claims against the individual County defendants, Entrekin and Thrash, in their individual and official capacities. For official capacity claims against municipal actors, *Monell* is applicable: plaintiffs must allege that these individuals acted pursuant to a policy or custom when they violated plaintiffs' rights. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Plaintiffs' claims against Entrekin and Thrash in their official capacities provide the same potential relief as the *Monell* claims against Chester County (County MH/ID), and thus are redundant. *See Thomas v. City of Chester*, No. 15 Civ. 3955, 2016 WL 1106900, at *2-3 (E.D. Pa. Mar. 21, 2016); *Moore v. City of Philadelphia*, Civil Action No. 14-133, 2014 WL 859322, at *3 (E.D. Pa. March 5, 2014) (reviewing cases dismissing official capacity claims as redundant and dismissing redundant official capacity claims based on court's inherent authority to "achieve the orderly and expeditious disposition of cases"). The Court exercises its discretion to dismiss the official capacity claims against Entrekin and Thrash (Count III). This

dismissal is with prejudice because amendment would be futile as any official capacity claims for damages under § 1983 are duplicative of plaintiffs' *Monell* claims against Chester County (County MH/ID).

Plaintiffs' § 1983 claims against Entrekin and Thrash in their individual capacities also fail because the Complaint does not allege their personal involvement in violating plaintiffs' rights. *See Johnson*, 349 F. App'x at 681. Entrekin is not mentioned in any factual allegations; Thrash is mentioned in only three paragraphs which describe her denying some of plaintiffs' requests. Compl. ¶¶ 74, 76, 86. The Court determines that these allegations are insufficient to state a claim against Entrekin and Thrash in their individual capacities. Accordingly, plaintiffs' individual capacity claims under the Medicaid Act and § 1983 (Count III) against Entrekin and Thrash are dismissed without prejudice to plaintiffs' right to file an amended complaint within twenty (20) days if warranted by the facts and applicable law.

**E.      Claims under the Pennsylvania Mental Health/Intellectual Disability Act (Count VI)**

Plaintiffs assert these claims against the County defendants only. The Complaint alleges that the County defendants violated the MH/ID Act by "failing to provide access to state and county-funded services to eligible individuals up to the availability of state allocated funding," "failing to assess the individual and family needs and develop a life management plan for Morgan Cohen and her family," and "failing to ensure the availability of consultation and education services to professional personnel and specialized rehabilitative and training services and … any other service or program designed to prevent mental disability or the necessity of admitting or committing the mentally disabled to a facility." Compl. ¶¶ 159-162 (citing 50 P.S. §§ 4301(d)-(e); 55 Pa. Code § 6201). For the reasons explained below, the Court dismisses plaintiffs' claims under the MH/ID Act without prejudice to plaintiffs' right to provide the Court

with authority establishing that they have a private right of action to enforce the applicable provisions of the MH/ID Act and to seek reconsideration of such dismissal on that ground.

In general, the MH/ID Act "divides responsibility for providing services to the mentally retarded between state and county governments," and makes "counties [] responsible for diagnosis, evaluation of needs, and development of a plan to meet those needs." *City of Phila. v. Com. Dept. of Public Welfare*, 564 A.2d 271, 273 (Commw. Ct. 1989) (citing 50 P.S. § 4301). "[T]he duties assigned to counties [under the MH/ID Act] are not all encompassing. The counties have been charged under § [4]301(d) of the Act. . . to provide short term care as well as rehabilitative and supportive services. . . where they would eliminate the necessity of institutionalization, even where those services would be required on a long term basis." *In re Schmidt*, 429 A.2d 631, 635-36 (Pa. 1981).

Neither the County defendants nor plaintiffs have addressed the issue of whether plaintiffs have a private right of action to enforce the MH/ID Act. The MH/ID Act does not create an explicit private right of action for beneficiaries of state-provided services to enforce its provisions against the state or counties. The entirety of plaintiffs' argument in support of their MH/ID Act claims is as follows:

> Plaintiffs have alleged that the County Defendants have violated Morgan's rights under the Pennsylvania Mental Health/Intellectual Disabilities Act of 1966, 50 P.S. § 4101 et seq. Under Section 4301(d) of the MH/ID Act, counties have an obligation to ensure the availability of an array of community-based services to persons with intellectual disability, including outpatient services, specialized rehabilitative and training, consultation and education services and "[a]ny other service or program designed to prevent mental disability or the necessity of admitting or committing the mentally disabled to a facility." The County Defendants have failed to ensure appropriate availability of these services to Morgan and to those who support her in the community. Defendants have also failed to assess the needs of Morgan and her family and to develop a life management plan for her.

Pls.' Resp. to Chester Cnty. Defs.' Mot. to Dismiss, at 26-27 (internal citations omitted).  The County defendants make no specific arguments concerning the MH/ID Act claims, but simply assert that the Complaint fails to allege sufficient facts to state any claim.

Plaintiffs have not provided any authority which establishes that they have an implied private right of action to enforce the MH/ID Act.  Moreover, the Court has not identified any such authority.  For these reasons, the Court dismisses plaintiffs' claims under the MH/ID Act (Count VI) without prejudice to plaintiffs' right to provide the Court with authority establishing that they have a private right of action to enforce the applicable provisions of the MH/ID Act and to seek reconsideration of such dismissal on that ground.

### F.   Intentional Infliction of Emotional Distress Claims (Count VII)

Plaintiffs assert these claims against the County defendants only.  The Complaint alleges that "Defendants deliberately and intentionally refused to provide adequate services to Morgan because of their animus toward Morgan's parents."  Compl. ¶¶ 164-65.  Defendants argue that the Complaint lacks factual allegations of sufficiently "outrageous" conduct to state an IIED claim.  Plaintiffs respond that "Defendants were thoroughly aware of the inadequacy of Morgan's services," which resulted in physical harm to her family, and that their refusal to supplement Morgan's services "can only be explained by malice and willful indifference."  Pls.' Resp. to Chester Cnty. Defs.' Mot. to Dismiss, at 28-29.  For the following reasons, the Court agrees with the County defendants.

A plaintiff must allege four elements to state a claim for intentional infliction of emotional distress: (1) the conduct in question "must be extreme and outrageous," (2) "it must be intentional or reckless," (3) "it must cause emotional distress," and (4) "the emotional distress must be severe." *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989).  "Outrageous or extreme conduct" must be "so outrageous in character, so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.  It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice'. . . ." *Swisher v. Pitz*, 868 A.2d 1228, 1230-31 (Pa. Super. 2005) (internal quotations omitted).

The County defendants' alleged conduct is not "so outrageous in character. . . as to go beyond all possible bounds of decency." *Id.*, at 1230-31.  The Complaint alleges that the County defendants denied plaintiffs' requests for certain services and assistance for Morgan under the Waiver program.  This is completely unlike the conduct that Pennsylvania courts have found to be sufficiently "outrageous" to sustain an IIED claim.  *See, e.g.*, *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (1981) (defendant intentionally fabricated records suggesting that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. 1989) (defendant power company intentionally vented radioactive steam on plaintiff worker solely to keep reactor operational and deliberately made two false statements to worker to conceal its actions).  The facts alleged in the Complaint fall far short of conduct that would be "utterly intolerable in civilized society."  *Swisher*, 868 A.2d at 1230-31.  For these reasons, the Court grants the County defendants' Motion to Dismiss plaintiffs' IIED claims (Count VII) without prejudice to plaintiffs' right to file an amended complaint within twenty (20) days if warranted by the facts and applicable law.

### G.   County Defendants' Alternative Motion for More Definite Statement under Rule 12(e)

Rule 12(e) provides in relevant part: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion… must point out the defects complained

of and the details desired."  Fed. R. Civ. P. 12.  "Motions for a more definite statement, however, are 'generally disfavored,' particularly in light of the liberal pleading standards under the Federal Rules."  *Liggon-Redding v. Generations, Interstate, Harvest House APT*, No. 14 Civ. 3191, 2015 WL 3991148, at *4 (D.N.J. June 30, 2015).  A Rule 12(e) motion "is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading."  *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967).  Ultimately, "the decision to grant a motion for a more definite statement is committed to the discretion of the district court."  *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 182 (M.D. Pa. 2008).

The Complaint in this case, while long and complex, is not "so vague or ambiguous that [defendants] cannot reasonably prepare a response."  Like many complaints, it is organized into sections containing factual allegations and sections pleading various counts.  The factual section contains more than enough information to put defendants on notice of the conduct underlying the claims against them, and which they can admit or deny in an answer to the Complaint.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (stating that relief under Rule 12(e) is appropriate only when "a pleading fails to specify the allegations in a manner that provides sufficient notice.").  Accordingly, the Court denies the County defendants' alternate Motion for a More Definite Statement under Rule 12(e).

V.   <u>**CONCLUSION**</u>

For the foregoing reasons, defendants' Motions to Dismiss are granted in part and denied in part.  The following claims are dismissed:

- All Counts against County MH/ID are dismissed without prejudice to plaintiffs' right to reassert such claims against Chester County by amended complaint within twenty (20) days if warranted by the facts and applicable law, with the exception of the Due Process claims (Count V), which are dismissed with prejudice;

- Count III: Medicaid Act claims under § 1983 against DHS, ODP, and Entrekin and Thrash in their official capacities are dismissed with prejudice;

- Count III: Medicaid Act claims under § 1983 against the County and Commonwealth defendants in their individual capacities are dismissed without prejudice to plaintiffs' right to file an amended complaint within twenty (20) days if warranted by the facts and applicable law;

- Counts IV and VII: Equal Protection claims under § 1983 and IIED claims against all defendants are dismissed without prejudice to plaintiffs' right to file an amended complaint within twenty (20) days if warranted by the facts and applicable law;

- Count V: Due Process claims under § 1983 against all defendants are dismissed with prejudice;

- Count VI: MH/ID Act claims against all defendants are dismissed without prejudice to plaintiffs' right to provide the Court with authority establishing that they have a private right of action to enforce the applicable provisions of the MH/ID Act and to seek reconsideration of such dismissal on that ground;

The claims remaining in the case are:

- Counts I and II: ADA and Rehabilitation Act claims against DHS and ODP;

- Count III: Medicaid Act claims under § 1983 against Dallas and Thaler in their official capacities for prospective injunctive relief.

The County defendants' alternative Motion for a More Definite Statement under Rule 12(e) is denied.  An appropriate order follows.